PD-0326&0327&0328-18
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/4/2018 3:10 PM
Accepted 6/6/2018 9:37 AM
DEANA WILLIAMSON
CLERK

NOS. PD-0326-18; PD-0327-18; PD-0328-18

\*

FILED
COURT OF CRIMINAL APPEALS
6/6/2018
DEANA WILLIAMSON, CLERK

IN THE TEXAS COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

\*

MARCELA A. BESADA-PERU

vs.

THE STATE OF TEXAS

\*

On Review from the Fourteenth Court of Appeals, at Houston, Texas
Appeal Nos. 14-17-00193-CR; 14-17-00194-CR; 14-17-00195-CR; and

On Review from the Harris County Criminal Court at Law No. 2
Case Nos. 2118652, 2118654 and 2118655
Hon. William Harmon, Presiding

## PETITION FOR DISCRETIONARY REVIEW

### For the Petitioner

Clay S. Conrad
TBA # 00795301
LOONEY & CONRAD, PC
11767 Katy Frwy., Suite 740
Houston, Texas 77079
(281) 597-8818 (Office)
(281) 597-8284 (Telefax)
csconrad@looneyconrad.com

1

## IDENTITY OF JUDGE, PARTIES & COUNSEL

The Judge in the court below was Honorable William Harmon. The parties with an interest in the outcome of this proceeding are Marcela A. Besada-Peru and the State of Texas.

Counsel in the court below and on appeal are as follows:

For the Petitioner

Clay S. Conrad
LOONEY & CONRAD, PC
11767 Katy Frwy, Suite 740
Houston, Texas 77079
(281) 597-8818 (Office)
(281) 597-8284 (Telefax)
csconrad@looneyconrad.com

For the Respondent

Honorable Kim Ogg
    District Attorney

Chris Conrad
Assistant District Attorney

Tim Goodwin
Assistant District Attorney

1201 Franklin, Suite 600
Houston, Texas 77002
(713) 274-5826 (Office)
Conrad_chris@dao.hctx.net

2

# TABLE OF CONTENTS

Identity of the Parties.................................................................................. 2

Table of Contents....................................................................................... 3

Index of Authorities................................................................................... 4

Statement Regarding Oral Argument...................................................... 6

Statement of the Case ............................................................................... 7

Statement of Procedural History ............................................................ 8

Questions Presented for Review.............................................................. 9

Record....................................................................................................... 10

Argument

Issue One ................................................................................................. 16

Issue Two................................................................................................. 19

Prayer for Relief ..................................................................................... 22

Certificate of Service ............................................................................23

Certificate of Compliance ....................................................................23

Appendix

      Court of Appeals Opinion

      Order Denying Rehearing

      Order Denying Rehearing En Banc

# INDEX OF AUTHORITIES

*Blue v State,*
    41 S.W.3d 129 (Tex. Cr. App. 2000)...................................................................... 18

*Bollenbach v United States,*
    326 U.S. 607 (1946)............................................................................................... 18

*Cuyler v Sullivan,*
    446 U.S. 335 (1980)............................................................................................... 21

*Gaal v State,*
    332 S.W.3d 448 (Tex. Cr. 2011)............................................................................. 9

*Hicks v United States,*
    150 U.S. 442 (1893)............................................................................................... 18

*In re Barr,*
    13 S.W.3d 525 (1998)............................................................................................. 16

*In re Thoma,*
    873 S.W.2d 477 (1994)........................................................................................... 16

*James v State,*
    763 S.W.2d 776 (Tex. Cr. App. 1989)................................................................... 21

*Keagler v State,*
    16 S.W.3d 908 (Tex. App.-Houston-[14th Dist] 2000).......................................... 20

*Keller v State,*
    662 S.W.2d 362 (Tex. Cr. App. 1984)................................................................... 20

*Kemp v State,*
    846 S.W.2d 289 (Tex. Cr. App. 1992)..................................................................... 9

*LaGone v State,*
    209 S.W.411 (Tex. Cr. App. 1919)......................................................................... 18

*Lee v Gonzales,*
    410 F.3d 778 (CA5 2005) ...................................................................................... 12

*Liteky v United States,*
510 U.S. 540 (1994)...........................................................................17

*Maddox v State,*
613 S.W. 2d 275 (Tex. Cr. App. 1980).......................................21

*Rodriguez v State,*
470 S.W.3d 823 (Tex. Cr. App. 2015).........................................17

*Starr v United States,*
153 U.S. 614 (1894)...........................................................................18

*United States v Grinnell,*
384 U.S. 563 (1966)...........................................................................18

*Westbrook v State,*
29 S.W.3d 103 (Tex. Cr. App. 2000)...........................................9

8 U.S.C. 1251 (a) (2) (A) (iii)

8 U.S.C. 1227 (a) (2) (A) (ii)

# STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument. This case presents issues of first impression. The Court is asked to determine what protections are accorded a pre-*Padilla* resident alien when her counsel's outright lies were calculated to coerce a guilty plea to multiple crimes involving moral turpitude. A lawyer's lies convinced a resident alien seeking citizenship to enter guilty pleas to crimes that made her automatically deportable.

The Court is also asked to determine what Texas law will be when a presiding judge decides a case based on his announced racist beliefs that establish a deep-seated antagonism toward resident-aliens.

It is believed oral argument will benefit the Court in deciding these issues.

## STATEMENT OF THE CASE

This is a post-conviction habeas corpus proceeding. Petitioner, a resident alien whose husband and child are U.S. citizens, was coerced to plead guilty to multiple crimes involving moral turpitude by an attorney who was representing multiple co-defendants. Counsel flatly lied, promising to clear Petitioner's record for immigration purposes. In reality, she became automatically deportable. Effectiveness of counsel was challenged October 26, 2016, (R. Vol. Tr. 5-28).

A hearing was held February 10 and 17, 2017, (R. Vol. II., 2) (R. Vol. III). Habeas relief was denied based on the court's racist beliefs toward resident-aliens derived from a source other than the evidence presented at the hearing. Judgment was entered February 17, 2017. (R. Vol. Tr. 43) (Appendix A). There were no written findings, but findings were orally announced from the bench. Notice of appeal was filed March 8, 2017, (R. Vol. Tr. 44).

Denial of relief was AFFIRMED by the Fourteenth Court of Appeals, without mention of the lies told by counsel and the racist beliefs held by the habeas judge. Denial of relief was AFFIRMED January 25, 2018. (Appendix B). Rehearing and Rehearing En Banc were denied on February 27, 2018. (Appendix C) (Appendix D). This petition for discretionary review follows.

## STATEMENT OF PROCEDURAL HISTORY

Original petition for habeas corpus pursuant to Art. 11.09 Tex. Code Crim. Proc. was filed October 26, 2016. (R. Vol. Tr. 5-28). An evidentiary hearing was ordered January 18, 2017 (R. Vol. Tr. 29), and held on February 10, 2017 and February 17, 2017. (R. Vol. II, 2) and (R. Vol III). Habeas corpus was denied February 17, 2017 via oral rendition. (R. Vol. III, 27). Judgment was entered February 17, 2017. (R. Vol. Tr. 43). Notice of Appeal was filed March 8, 2017, (R. Vol. Tr. 44). Denial of habeas corpus was AFFIRMED January 25, 2018 by the Fourteenth Court of Appeals. (Appendix A). Motions for Rehearing and Rehearing En Banc were filed February 9, 2018. Rehearing was overruled February 27, 2018, (Appendix B). Rehearing En Banc was denied the same day. (Appendix C). Petition for discretionary review is timely if filed filed with this Court on or before March 29, 2018.

## QUESTIONS PRESENTED FOR REVIEW

The Court of Appeals has decided two important questions involving state and federal law that have not been, but should be, settled by the Court of Criminal Appeals:

### Issue One

The Court of Appeals AFFIRMED the denial of habeas corpus without determining whether judicial racism contributed to the judgment entered, an issue that should be determined by this Court of Criminal Appeals. (R. Vol. III., 22-24).

### Issue Two

The Court of Appeals AFFIRMED the denial of habeas corpus without determining whether trial counsel's fraud on the court resulted in the judgment entered, an issue that should be determined by this Court of Criminal Appeals. (R. Vol. II., 8-9) (R. Vol. III., 10-14, 18).

## ARGUMENT

### Standard of Review

This Court reviews a claim of judicial bias and prejudice for abuse of discretion. *Gaal v State*, 332 S.W.3d 448, 456 (Tex. Cr. App. 2011). This Court considers the totality of the evidence and information elicited to see if the record reveals sufficient evidence to support a finding the trial judge was unbiased. *Id.*, *Gaal v State*, at 332 S.W.3d at 456; citing: *Westbrook v State*, 29 S.W.3d 103, 120-21 (Tex. Cr. App. 2000); *Kemp v State*, 846 S.W.2d 289, 306 (Tex. Cr. App. 1992).

## STATEMENT OF FACTS

Petitioner was born in Argentina. She came to the United States legally in 2002. She spoke no English. (R. Vol. III, 15). She became a resident in 2004. (R. Vol. II., 18). She is married to a United States citizen, and has a daughter, also a United States citizen. (R. Vol. II., 2). She is on the path to citizenship. (R. Vol. II., 18). Immigration concerns have been uppermost in her mind for years.

Petitioner took a job as a topless dancer because it was the only job that would pay her enough to help her family. (R. Vol. III., 8). While working she was swept up in a vice sting along with numerous other women. She had done nothing illegal. (R. Vol. II, 6-7, Vol. III, 6). She was represented by the Club's lawyer, James Butler, who represented all the girls and the Club. (R. Vol. II, 6, Vol. III. 6-7). She paid Mr. Butler $1,500.00. (R. Vol. III, 8). Conflict of interest was never explained.

Butler told Petitioner and her husband her cases were not about guilty and not guilty. (R. Vol. II., 8). He explained she would plead guilty to time served, and this would be all over. He would handle clearing the convictions later, but they had to get through the plea proceeding first. (R. Vol. II., 9; Vol. III., 10).

Petitioner spoke no English. Butler knew this. He never told the Court that Petitioner did not speak English so the Court would know to appoint an interpreter.

In the plea colloquy Butler positioned himself in front of Petitioner throughout the plea. He nodded his head "yes" when a yes answer was needed. He shook his

head "no" when a no answer was needed. (R. Vol. III. 18). Butler completely prompted Petitioner on how to answer the Court's questions during the plea colloquy. (R. Vol. III. 13). Prior to the plea colloquy and in order to coerce the guilty plea Butler lied to Petitioner and her husband that he could re-open the case after five years and clear Petitioner's record. Butler's promise was that Petitioner's immigration status would be unaffected. (R. Vol. II., 9; Vol. III. 10-11). Had Petitioner known this was a lie she would never have pleaded guilty. She would have gone to trial. She had done nothing wrong. (R. Vol. II., 9).

When the time came to do so Petitioner and her husband began looking for Butler to have her record cleared. (R. Vol. II. 10). They called, but received no answer. They left messages, which were not returned. (R. Vol. III. 11). When they were unsuccessful they began contacting other lawyers. This is when they learned for the first time that Mr. Butler lied. Her record could not be cleared. When asked about her immigration status in the hearing Petitioner replied: "That's why I'm here." (R. Vol. III., 19). The most important consideration for Petitioner was the lie by Butler to clear up her convictions after three to five years because she was not guilty, and she wanted her immigration status cleared. (R. Vol. III. 14).

This was not a case of "misadvising" or "misrepresenting" the truth. Butler lied. Convictions for multiple crimes involving moral turpitude have a specific consequence: automatic deportation under 8 U.S.C. 1251 (a)(2)(A)(iii). There is no

11

appeal from the deportation order. 8 U.S.C. 1227 (a)(2)(A)(ii); *Lee v Gonzales,* 410 F.3d 778, 781-82 (CA5 2005). There is no way to "clear" the record as Butler had promised.

Butler gave an affidavit where he avoided the claim adeptly. (R. Vol. Tr. 28). He stated: "I cannot recall with reasonable certainty whether Ms. Peru was specifically advised as to possible immigration consequences by myself or Judge Harmon." Judge Harmon apparently believed a lawyer would NOT recall convincing a resident alien on the path to citizenship, with a husband and daughter who were already citizens, to plead guilty to two crimes involving moral turpitude that would result in her immediate deportation without an appeal.

Two problems with Butler's affidavit: (1) Judge Harmon was not required by law to admonish pursuant to Art. 26.13 Tex. Code Crim. Proc.; and (2) To believe Butler's affidavit it must be believed admonishing aliens with multiple convictions for crimes involving moral turpitude resulting in automatic deportation without a right to appeal is so routine as to cause a lawyer to possibly forget if the admonishment was given in any given case. Or, as Petitioner and her husband testified, Butler lied.

In the face of those charges, Butler denied nothing. A lawyer was accused of actually lying to his client, and he denied nothing. The State presented nothing. The State established nothing on cross-examination. Judge Harmon examined both

Petitioner and her husband and did not address the fraud on his court Petitioner claimed occurred.

The case was determined, exclusively, on personally held racist beliefs held by Judge Harmon against resident aliens. Judge Harmon recommended the unreasonable: Petitioner could simply "fly under the I.N.S. radar screen," live as a criminal, and not seek citizenship. (R. Vol. III, 22-24). By not seeking citizenship Petitioner could live as an illegal alien "flying under the I.N.S. radar screen" and avoid deportation. Rather than address the lies told by Butler, and rather than address what made her deportable, Petitioner was encouraged to live with her family, illegally, as a convicted person with no defense for staying in this country with her family **A judge told a defendant to live illegally in this country!**

There was no evidence hiding from I.N.S. as an illegal alien, evading detection, was a reasonable resolution. There was no evidence simply not pursuing citizenship and living under the I.N.S. radar screen was a reasonable resolution. Racist beliefs against Hispanic resident aliens determined the court's judgment.

The Court of Appeals avoided the issue altogether. That Court determined that since the habeas court disbelieved Petitioner that was the end of the inquiry. The Court relied on the precedent binding any court of appeals to give full discretion to the lower court's credibility findings. The lower court found Petitioner not credible, therefore, Petitioner failed to carry her burden. The Court failed to address whether

13

that precedent is binding on any court of appeals where the lower court credibility finding is based on racist beliefs held by the lower court.

Petitioner's husband testified. The husband spoke English. He acted as interpreter for his wife. (R. Vol. II., 7; Vol. III., 9). He did not know all the words, but he did the best he could. (R. Vol. II., 7-8; Vol. III., 9). Butler spoke no Spanish. He explained "in English" the decision was not "not guilty" and not "innocent", but rather the decision was to take a plea bargain. (R. Vol. II., 8). Butler explained, in English, that Petitioner could plead guilty to time served, and it would be over. (R. Vol. II., 9; Vol. III., 10). Butler *told Appellant and Stephen Peru,* (Appellant's Original Brief at p. 13) *that he could open the case up after five years and get it off Appellant's record, and it would not affect her in any way as far as her immigration status,* (Appellant's Original Brief at p. 13). (R. Vol. II., 9; Vol. III., 10-11).

The Court questioned Mr. Peru vigorously. Judge Harmon did not find Stephen Peru not credible. Stephen Peru testified that Butler had promised to clear "Ms. Peru's" record by expunging the convictions. Stephen Peru testified how he had tried to find Butler when five years had passed. Stephen Peru testified he could not find him, that Butler had avoided him altogether, that he met with other lawyers, and he realized his wife's record could not be cleared. The Court of Appeals avoided addressing the merits of a claim, by an independent witness, that his wife's lawyer,

14

whom he had to translate for, promised to clear up his wife's record for immigration purposes. The Court of Appeals avoided an issue that should not have been avoided.

The second suggestion was to disbelieve Petitioner's inability to speak English. The court disbelieved Petitioner could not speak English. It was not a credibility issue. The court disbelieved Petitioner could speak English because she had been living in the United States. Therefore, counsel rendered effective assistance. (R. Vol. Tr. 48-51; R. Vol. III., 24-27).

There was no evidence Petitioner spoke English. There are many people in the United States who do not speak English. The United States does not have an official language. There was nothing for Judge Harmon to base a credibility finding upon. Judge Harmon made no reference to what had been proven in the hearing that convinced him Petitioner did not speak English. The credibility finding came during a discussion with habeas counsel relating to it being "... uncontroverted that her lawyer did not do a stellar job representing her. In fact, it is well below the requirements of *Strickland.*" Instead of addressing counsel's performance Judge Harmon expressed his personal beliefs concerning Hispanics in this country and their ability to speak English. According to Judge Harmon, any Hispanic in this country for seven years not only speaks English, but also knows English sufficiently to understand American court proceedings. (R. Vol. III., 24-27) (R. Vol. Tr. 48-51). The Court of Appeals never addressed whether a presiding judge's credibility

findings, based on personal racist beliefs, binds any court of appeals to give full deference to those credibility findings.

## Issue One

**The Court of Appeals affirmed without determining whether judicial racism determined the judgment entered, an issue that should be decided by this Court of Criminal Appeals.**

## Argument

This case presents this Honorable Court with an unfortunate task, not easily avoided. This Court is asked to find that a member of the Texas judiciary decided a case on personally held racist beliefs announced from the bench in a court proceeding. Comments that can be overlooked when made by the ordinary citizen cannot always be overlooked when made by a member of the Texas judiciary. *In Re Barr*, 13 S.W.3d 525, 536 (1998). The dignity of the judiciary must be protected. *In Re Thoma*, 873 S.W.2d 477 (1994).

Judge Harmon believes aliens can speak English if they have been here long enough. Judge Harmon believes a legal alien is no different from an illegal alien because a legal alien is not prejudiced by her counsel lying to her about the immigration consequences of a guilty plea because that legal alien can just live in this country illegally, just under the I.N.S. radar screen. The Court of Appeals

16

avoided addressing these racist comments. The Court of Appeals actually sanctioned lower court credibility findings being based on racist beliefs.

The type of judicial bias or prejudice sufficient to warrant overruling a lower court's rulings cannot be determined by a court's unfavorable ruling alone. Actionable judicial bias can exist only under limited circumstances. Judicial bias and prejudice that connotes an unfavorable disposition or opinion that is somehow wrongful or inappropriate either because it is undeserved or that it rests on knowledge the court ought not to possess is actionable. Judicial remarks during the course of a proceeding can support such a challenge, if "they display a deep-seated ... antagonism that would make a fair judgment impossible ..." *Rodriguez v State,* 470 S.W.3d 823, 831 (Tex. Cr. App. 2015); citing: *Likety v United States,* 510 U.S. 540, 555-56 (1994).

The conclusion must be that under the singular facts of this case Judge Harmon's course of conduct throughout the entire proceeding showed a deep-seated antagonism against Petitioner. It was throughout the entire proceeding and violated Petitioner's right to a fair hearing. That conduct resulted in a judgment that neither this Court of Criminal Appeals, nor the public generally, could be confident was proper. That conclusion must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what Judge Harmon learned from

this case. *Kemp v State,* 846 S.W.2d 289, 305-306 (Tex. Cr. App. 1992); citing:

*United States v Grinnell,* 384 U.S. 563, 583 (1966).

Judge Harmon's words were received with deference and prove controlling. *Blue v State,* 41 S.W.3d 129, 131 (Tex. Cr. App. 2000); citing: *Starr v United States,* 153 U.S. 614, 626 (1894); citing *Hicks v United States,* 150 U.S. 442, 452 (1893); *Bollenbach v U.S.,* 326 U.S. 607, 612 (1946). The words cannot be ignored.

Judge Harmon had a great responsibility to conduct Petitioner's hearing being an exemplar of dignity and impartiality. He is duty bound to have restraint over his conduct and statements in order to maintain an atmosphere of impartiality. It was prejudicial and wrong for him to exhibit hostility toward Petitioner through his comments that could not be justified or rationalized as fair and impartial. This type of behavior is plainly erroneous. *Blue v State,* 41 S.W.3d 129, 132 (Tex. Cr. App. 2000).

This Court has long held that a judge shall maintain an attitude of impartiality throughout. *LaGone v State,* 209 S.W. 411, 415 (Tex. Cr. App. 1919). Judge Harmon did not come close to impartiality when he concluded a Spanish speaker becomes, as though by osmosis, an English speaker through the simple act of living in the United States. Judge Harmon did not come close to impartiality when he concluded Petitioner could forget the convictions that arose from her counsel lying to her about the effect on her immigration status and simply "live under the I.N.S. radar screen",

18

and forget about becoming a citizen. She should hide from I.N.S. and hope she doesn't get caught, and the court can just avoid having to address the claims she made seeking habeas relief. She claims she is being "illegally confined and restrained of her liberty", and Judge Harmon sends her out there to be "illegally confined and restrained of her liberty" encouraging her to hide really well. The embarrassment to the Texas judiciary is eclipsed only by the personal racist beliefs held by a member of the Texas Judiciary.

This Court should address this issue. Judgments based on the personal racist beliefs of a member of the Texas judiciary are not supposed to endure. This Court is the court of last resort to make right a judgment the public generally and this Court of Criminal Appeals cannot be confident was proper.


## ISSUE II.

**The Court of Appeals AFFIRMED the denial of habeas corpus without determining whether trial counsel's fraud on the court resulted in the judgment entered, an issue that should be determined by this Court of Criminal Appeals.**

### Argument

Petitioner challenges a guilty plea proceeding as being fraudulent. In this case it appears both Judge Harmon and the Court of Appeals were more interested in finding whatever reason could be found to affirm what happened in Petitioner's guilty plea than addressing the particulars of her complaint. Where neither court

19

could find a rationale for finding for Petitioner both courts chose to ignore the particulars. The particulars involve racism and fraud, but both were ignored.

Butler is alleged to have orchestrated a fraud on the lower court. He not only lied to his client about the very issue she was most concerned with in order to coerce a guilty plea, but he orchestrated the plea colloquy to guarantee the guilty plea went off without a hitch. Judge Harmon was not concerned he had been defrauded because of his feelings about Spanish speaking aliens. The Court of Appeals avoided addressing the issue completely notwithstanding its own precedent. *Kegler v State*, 16 S.W.3d 908 (Tex. App. - Houston - [14th Dist.] 2000, pet ref'd). It is as though when fraud on the court appears inside a guilty plea, the tendency is to run from it. Herein, the fraud was committed by defense counsel engaged in coercing his client to plead guilty while representing multiple co-defendants.

Court proceedings are supposed to be a search for truth in order to obtain an accurate determination of guilt/innocence. *Keller v State*, 662 S.W. 362, 365 (Tex. Cr. App. 1984); to avoid perjury; *Maddox v State*, 613 S.W.2d 275 (Tex. Cr. App. 1980). The issue should have been addressed by both Judge Harmon and the Court of Appeals. It was not, and this Court of Criminal Appeals is constrained to review the merits of the issues, and determine them.

The guilty plea proceedings were presumptively impermissible. One fact that cannot be, and has not been, denied by both Judge Harmon and the Court of Appeals,

20

is that Butler was engaged in representing multiple defendants without any waivers of conflict. The pitfalls in such representation are inherent and must be avoided. *Cuyler v Sullivan*, 446 U.S. 335 (1980); *James v State*, 763 S.W.2d 776 (Tex. Cr. App. 1989). That issue was not raised in the courts below, but it undeniably exists.

The issue that was presented is whether this inherently conflicted representation could result in a fraud on the court given what the habeas record presented. The facts presented were Butler orchestrated the plea colloquy; Butler lied to his client about "clearing" her record; and finally, when challenged, Butler could only say he could not recall whether his client knew what she was doing when she pleaded guilty. He denied nothing. His sworn testimony was artful but unavailing.

Petitioner's case is pre-*Padilla* and *Padilla* is not retroactive. There can be no cognizable claim Butler rendered ineffective assistance under *Padilla*. However, lying to his client to coerce a guilty plea is still problematic. What happens when a resident alien pleads guilty in a prompted plea colloquy trusting that her lawyer would clear her record? She has a husband and a daughter who are citizens. This Court of Criminal Appeals cannot simply ignore these issues.

At a bare and forgiving minimum this Court can REMAND this case to the lower court for further proceedings. What has resulted is a judgment that neither this

Court of Criminal Appeals, nor the public in general, can be confident was not improper.

## PRAYER FOR RELIEF

For the above reasons Petitioner prays this Court of Criminal Appeals grants a petition for discretionary review, to the end that this Court enters an Order REVERSING the judgment of the Court of Appeals and vacates Petitioner's convictions and orders a new trial in all cases.

In the alternative, Petitioner prays this Court of Criminal Appeals vacates the Court of Appeals opinion and REMANDS this case for further proceedings on the issue of fraud on the court.

Petitioner prays for any and all such other relief to which she may have shown herself entitled.

Respectfully submitted,

_____

Clay S. Conrad
TBA # 00795301
LOONEY & CONRAD, PC
11767 Katy Frwy, Suite 740
Houston, Texas 77079
(281) 597-8818 (Office)
(281) 597-8284 (Telefax)
csconrad@looneyconrad.com

**CERTIFICATE OF SERVICE**

I, Clay S. Conrad, certify that a true and correct copy of this Petitioner for Discretionary Review was duly served upon the District Attorney of Harris County, Texas, via regular mail, at her listed address, on March 27, 2018.

Clay S. Conrad
COUNSEL FOR PETITIONER

**CERTIFICATE OF COMPLIANCE**

This document was prepared in 14 pt. Times New Roman type and contains 4,317 words and 23 pages, within the page and word limitation set in the Texas Rules of Appellate Procedure, Rule 9.4 (i) (2).

Clay S. Conrad
COUNSEL FOR PETITIONER

23

NOS. <u>PD-0326-18; PD-0327-18; PD-0328-18</u>

\*

IN THE TEXAS COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS
\*

MARCELA A. BESADA-PERU

vs.

THE STATE OF TEXAS
\*

On Review from the Fourteenth Court of Appeals, at Houston, Texas
Appeal Nos. 14-17-00193-CR; 14-17-00194-CR; 14-17-00195-CR; and

On Review from the Harris County Criminal Court at Law No. 2
Case Nos. 2118652, 2118654 and 2118655
Hon. William Harmon, Presiding

## <u>APPENDIX</u>

A.   Opinion from Court of Appeals

B.   Order Denying Rehearing

C.   Order Denying Rehearing En Banc

1

## NOS. <u>PD-0326-18; PD-0327-18; PD-0328-18</u>

\*

# IN THE TEXAS COURT OF CRIMINAL APPEALS
## AT AUSTIN, TEXAS

\*

## MARCELA A. BESADA-PERU

### vs.

## THE STATE OF TEXAS

\*

---

**On Review from the Fourteenth Court of Appeals, at Houston, Texas
Appeal Nos. 14-17-00193-CR; 14-17-00194-CR; 14-17-00195-CR; and**

**On Review from the Harris County Criminal Court at Law No. 2
Case Nos. 2118652, 2118654 and 2118655
Hon. William Harmon, Presiding**

---

## <u>APPENDIX</u>

A.   Opinion from Court of Appeals

1

Affirmed and Memorandum Opinion filed January 25, 2018.



In The

## Fourteenth Court of Appeals

NO. 14-17-00193-CR
NO. 14-17-00194-CR
NO. 14-17-00195-CR

### EX PARTE MARCELA A. BESADA-PERU, Appellant

On Appeal from the County Criminal Court at Law No. 2
Harris County, Texas
Trial Court Cause Nos. 2118654, 2118655, 2118652

## MEMORANDUM OPINION

Appellant Marcela A. Besada-Peru, born in Argentina and a legal United States resident since 2004, was convicted of two misdemeanors in 2009 after pleading guilty to the charges. Appellant contends that she is now subject to deportation as a result of her convictions. Appellant filed three applications for writ of habeas corpus, in which she alleged that her "guilty" pleas were involuntary for three reasons: (1) she was not admonished of the immigration consequences of her pleas; (2) she was unable to understand the proceedings in English and an interpreter was required; and (3) her counsel provided ineffective assistance. After a hearing,

the trial court denied her applications. She now challenges those rulings in these appeals.

We conclude the trial court did not abuse its discretion in denying relief. As to appellant's first ground, we hold that Texas Code of Criminal Procedure article 26.13—the statute on which appellant relies—imposed no obligation on the trial court to admonish appellant on the deportation consequences of her pleas for the charged misdemeanor offenses. We reject appellant's second argument because she failed to prove by a preponderance of the evidence that the trial court was aware that appellant could not speak or understand English at the time she entered her pleas. Finally, as to appellant's third argument, appellant failed to prove by a preponderance of the evidence that her trial counsel's performance fell below reasonable standards of competence by failing to request an interpreter or that counsel misled appellant as to the availability of expunction. Accordingly, we affirm the trial court's judgments.

## Background

Appellant is a native of Argentina and a permanent legal resident of the United States. Appellant pleaded guilty on November 10, 2009, to charges for (1) prostitution and (2) disorderly conduct. The charges arose from appellant's alleged conduct while working at a sexually oriented business. The trial court assessed punishment of six days' confinement in county jail for the prostitution conviction and a $200 fine for the disorderly conduct conviction. As part of the plea agreement, the State dismissed a third charge, also for prostitution. Appellant did not appeal the convictions.

2

Almost seven years after her convictions, appellant filed three applications for writ of habeas corpus.[1] In each application, appellant challenged the voluntariness of her convictions on three grounds. First, she alleged that her counsel rendered ineffective assistance because (a) before appellant pleaded guilty, her counsel failed to advise her that a "guilty" plea and conviction for the charged offenses involving moral turpitude may affect her immigration status,[2] and (b) counsel knew appellant was not fluent in English but failed to request an interpreter. Second, appellant argued that the trial court accepting the plea failed to admonish appellant regarding the immigration consequences of a "guilty" plea, in violation of Texas Code of Criminal Procedure article 26.13(a)(4). Tex. Code Crim. Proc. art. 26.13(a)(4). Third, because she did not speak English, appellant claimed she did not understand the plea proceedings and an interpreter was not made available to her.

In support of her applications, appellant submitted her affidavit, her husband's affidavit, and an affidavit from her counsel during the plea proceedings, James Butler. According to appellant and her husband, appellant spoke "almost no English" in 2009, and Butler did not speak Spanish. Appellant's husband interpreted conversations between appellant and Butler. Appellant stated in her affidavit that Butler told her that her "guilty pleas" would not affect her immigration status and that she could remove her convictions from her record in three to five years. After five years passed, appellant attempted unsuccessfully to contact Butler. Appellant and her husband then spoke to other attorneys, who told them that appellant could not have her convictions expunged. Appellant contends that she is now at risk of

---

[1] Though appellant sought to have two convictions vacated, she filed three habeas applications because the State "should have their dismissal [of the third charge] back if the other two were returned."

[2] Appellant has abandoned this ground on appeal.

3

immediate deportation because her convictions are considered crimes of moral turpitude.

Butler stated in his affidavit that he could not recall with reasonable certainty whether he or the trial court specifically admonished appellant as to the possible immigration consequences of her pleas, but that he "always review[ed] the plea papers in detail before allowing [his] clients to sign."

The trial court held a hearing on appellant's applications. Appellant and her husband testified to essentially the same facts set forth in their affidavits. Appellant testified through an interpreter. Appellant did not offer any exhibits into evidence. No party introduced a reporter's record from the plea proceedings or copies of the judgments. The State called no witnesses.

The habeas judge was the same trial judge who accepted appellant's "guilty" pleas in 2009. During the hearing on appellant's habeas applications, the trial judge stated that he found appellant's testimony not credible. After the hearing, the trial court denied habeas relief.

Appellant now appeals.

## Jurisdiction and Standard of Review

Appellant was convicted of two misdemeanors. Texas Code of Criminal Procedure article 11.09 allows a person who is "confined on a charge of misdemeanor" to apply for habeas relief. Tex. Code Crim. Proc. art. 11.09.[3] We

---

[3] The State does not dispute that appellant is "confined" for purposes of article 11.09 because she faces collateral legal consequences resulting from her misdemeanor convictions. *See, e.g., Le v. State*, 300 S.W.3d 324, 326-27 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (applicant's federal detention and potential deportation were based on Texas misdemeanor convictions and thus she faced "collateral legal consequences"); *State v. Collazo*, 264 S.W.3d 121, 126 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (the term "confinement" encompasses, *inter alia*, any restraint on personal liberty).

4

have appellate jurisdiction from the denial of an application for writ of habeas corpus challenging a misdemeanor conviction. *See Ex parte Jordan*, 659 S.W.2d 827, 828 (Tex. Crim. App. 1983).

We review a trial court's decision on an application for writ of habeas corpus for abuse of discretion. *See Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011); *Ex parte Roberts*, 494 S.W.3d 771, 774 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). An applicant seeking misdemeanor post-conviction habeas corpus relief must establish entitlement to such relief by a preponderance of the evidence. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002).

The trial court sits as the fact finder in a habeas proceeding brought under article 11.09. *See Ex parte Martinez*, 451 S.W.3d 852, 856 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). In such cases, the habeas court is the sole judge of witness credibility, and we will not disturb its ruling absent a clear abuse of discretion. *See id.*; *see also Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). The trial court may accept or reject any or all of any witness's testimony, even if that testimony is uncontroverted. *Ex parte Peterson*, 117 S.W.3d at 819 n.68; *Rios v. State*, 377 S.W.3d 131, 135 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *see also, e.g., Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008) (describing abuse-of-discretion standard generally); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (stating, in motion to suppress context, "the judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted"); *cf. Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (holding that, in motion for new trial context, trial court not required to accept as true testimony of accused or any defense witness simply because it was uncontroverted).

5

We infer all implied findings of fact that are necessary to support the habeas court's ruling. *See Ex parte Martinez*, 451 S.W.3d at 856. We defer to the habeas court's implied or explicit findings of fact that are supported by the record, even when no witnesses testify and all of the evidence is submitted through affidavits. *See Ex parte Wheeler*, 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006). We consider the evidence presented in the light most favorable to the habeas court's ruling. *Ex parte Fassi*, 388 S.W.3d 881, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We will uphold the habeas court's judgment as long as it is correct on any theory of law applicable to the case. *Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001) (per curiam).

## Analysis

When a criminal defendant pleads guilty she waives several constitutional rights, such as the right to a trial by jury, the right to confront the witnesses against her, and her Fifth Amendment privilege against self-incrimination. *Davison v. State*, 405 S.W.3d 682, 686 (Tex. Crim. App. 2013). Given that a "guilty" plea is a "grave and solemn act to be accepted only with care and discernment," *Brady v. United States*, 397 U.S. 742, 748 (1970), the waiver of constitutional rights associated with such a plea "not only must be voluntary but must be [a] knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Id.* It follows, therefore, that for a "guilty" plea to be valid, the defendant must have an actual awareness of the constitutional rights and privileges that she necessarily relinquishes. *Davison*, 405 S.W.3d at 686. In other words, she must have "a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). A person who proves by a preponderance of the evidence that a "guilty" plea was not voluntary or knowing is

6

entitled to habeas relief. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).

Appellant argues that she pled guilty involuntarily and without knowledge of the immigration consequences because: (1) the court did not admonish her regarding the immigration consequences of her pleas; (2) she did not speak English and could not understand the plea proceedings; and (3) her trial counsel misled her as to whether her convictions could be expunged and failed to request an interpreter.

We address each contention in turn.[4]

## A.    Immigration Consequences of Appellant's Guilty Pleas

In her first issue, appellant argues that her due process rights were violated because the trial court accepting her pleas in 2009 did not admonish her regarding the immigration consequences of a "guilty" plea, thereby rendering appellant's pleas involuntary.

As the sole basis for her argument, appellant contends the trial court violated Texas Code of Criminal Procedure article 26.13. That statute requires a trial court, prior to accepting a plea of guilty or nolo contendere, to admonish a defendant of "the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." Tex. Code Crim. Proc. art. 26.13(a)(4).

---

[4] The State argues for the first time on appeal that the doctrine of laches bars appellant's requests for habeas relief. *See Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex. Crim. App. 2014) (per curiam) (State does not waive defense of laches by failing to assert the defense in the trial court). Because we conclude the trial court did not abuse its discretion in denying the applications, we need not consider the State's laches argument. *Accord Ex parte Martinez*, 451 S.W.3d at 855 (addressing appellant's merits-based issue rather than trial court's alternative laches ruling).

7

Appellant's reliance on article 26.13 is misplaced. The Court of Criminal Appeals has long held that article 26.13's statutory admonishments do not apply to misdemeanor cases. *See, e.g., State v. Guerrero,* 400 S.W.3d 576, 589 (Tex. Crim. App. 2013) ("[A]s we have repeatedly stated, [article 26.13] does not apply to misdemeanor cases."). According to appellant, both of her convictions were misdemeanors. Thus, the trial court accepting the 2009 pleas was not required to admonish appellant under article 26.13. *See id.*

We therefore hold that the trial court did not abuse its discretion in denying appellant's habeas applications on the ground that she was not admonished under article 26.13 on the immigration consequences of her pleas. *See Ex parte Garcia,* 353 S.W.3d at 787.

We overrule appellant's first issue.

## B. Appellant's Ability to Understand the Plea Proceedings

In her second issue, appellant argues that the trial court violated her due process rights by failing to admonish appellant in a language she could understand, i.e., Spanish, thereby rendering her pleas involuntary.[5]

Providing an interpreter to an accused who does not understand English is required by the Confrontation Clause. *See Garcia v. State,* 149 S.W.3d 135, 141 (Tex. Crim. App. 2004). The protections afforded by the Confrontation Clause extend to foreign nationals[6] and apply in plea proceedings. *See Linton v. State,* 275 S.W.3d 493, 501 (Tex. Crim. App. 2009); *Aleman v. State,* 957 S.W.2d 592, 594

---

[5] In her third issue, which we address in the next section, appellant challenges her trial counsel's failure to have an interpreter appointed during the plea proceedings. This second issue solely concerns whether the trial court erred in not appointing an interpreter.

[6] *Garcia,* 149 S.W.3d at 141 (citing *Wong Wing v. United States,* 163 U.S. 228, 238 (1896)).

(Tex. App.—El Paso 1997, no pet.). If a defendant cannot hear or does not speak English well enough to understand plea proceedings or communicate with counsel, fundamental fairness and due process of law require that an interpreter be provided to translate between English and the accused's language. *Linton*, 275 S.W.3d at 500. Appointment of an interpreter is mandatory when the court determines on motion that "a person charged or a witness does not understand and speak the English language,"[7] or when the trial court becomes aware that a defendant does not speak or understand English. *See Garcia*, 149 S.W.3d at 145; *Baltierra v. State*, 586 S.W.2d 553, 559 & n.9 (Tex. Crim. App. 1979). Absent a knowing and voluntary waiver made on the record, "the judge has an independent duty to implement this right," regardless of whether the matter is raised by the parties. *Garcia*, 149 S.W.3d at 145. A failure to do so results not only in a statutory violation but can render a defendant's plea constitutionally involuntary, *Aleman*, 957 S.W.2d at 594, or violate the defendant's right to confront the witnesses against the defendant. *Garcia*, 149 S.W.3d at 145. However, that a defendant is more fluent in a language other than English does not necessitate an interpreter if the defendant demonstrates an ability to understand and speak English. *See Hernandez v. State*, 986 S.W.2d 817, 822 (Tex. App.—Austin 1999, pet. ref'd).

A trial court may become aware that the defendant does not understand English if informed by a party or "by noticing the problem *sua sponte*." *Garcia*, 149 S.W.3d at 145. "Decisions regarding adequate interpretive services depend upon a potpourri of factors, including the defendant's understanding of the English language and the complexity of the pertinent law and its procedures, and the testimony." *Linton*, 275 S.W.3d at 500. Accordingly, because the trial court has the defendant in its presence, "observ[es] his level of comprehension, and ask[s] him

---

[7] Tex. Code Crim. Proc. art. 38.30(a).

questions," it "has wide discretion in determining the adequacy of interpretive services." *Id.*

Appellant has not proven by a preponderance of the evidence that the trial court was aware of an alleged problem with appellant's understanding of the English language during the plea proceedings. The only evidence appellant provided in support of her claim was her own testimony and that of her husband. According to her affidavit, appellant's primary language is Spanish, and she testified at the habeas hearing that, at the time of her pleas, she did not speak or understand English. Appellant also testified that her trial counsel did not speak Spanish. Appellant's husband translated the conversations between appellant and her counsel. Butler's affidavit, attached to appellant's habeas petitions, did not address whether Butler spoke English or Spanish to appellant, but he nonetheless knew "with certainty" that he "always review[ed] the plea papers in detail before allowing [his] clients to sign."

We do not have a reporter's record of the plea hearing, and nothing in the record provided shows that appellant requested an interpreter at the plea hearing. Appellant did not file a motion for an interpreter. When asked questions in English during the plea proceedings, she answered in English. Although appellant contends her answers were prompted by her counsel, she has not shown that she raised any objection during plea proceedings. Nothing in the record reflects that the trial court was made aware of appellant's purported inability to speak, read, and understand English. In fact, in making her ineffective assistance of counsel arguments, appellant asserts (and thus confirms) that her counsel failed to alert the trial court to her inability to speak English and her need for an interpreter.

Even though the State did not offer evidence to controvert appellant's and her husband's affidavits, it was within the trial court's discretion to disbelieve their assertions that appellant did not read or speak English at the time of the plea

10

proceedings. *See Charles v. State*, 146 S.W.3d 204, 210 (Tex. Crim. App. 2004), *superseded by rule on other grounds as stated in State v. Herndon*, 215 S.W.3d 901, 905 n.5 (Tex. Crim. App. 2007); *Shanklin v. State*, 190 S.W.3d 154, 167 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd); *see also Le*, 300 S.W.3d at 327 (holding that appellate court must defer to all implied factual findings supported by record). As stated on the record, the trial judge did not believe that appellant "does not understand sufficient English in order to have participated in a plea in a criminal court." The trial court, and not this court, is in the best position to have determined whether appellant understood what she was stipulating to at the time she entered her plea. *See Ex parte Wilson*, 171 S.W.3d 925, 928 (Tex. App.—Dallas 2005, no pet.). We give almost total deference to the trial court's determination of historical facts supported by the record, especially the court's findings that are based on an evaluation of credibility. *See Ex parte Klem*, 269 S.W.3d 711, 718 (Tex. App.— Beaumont 2009, pet. ref'd); *Ex parte Wilson*, 171 S.W.3d at 928. Given the conflicting evidence regarding appellant's ability to understand and speak English, the judge reasonably could have disbelieved appellant's and appellant's husband's testimony that appellant did not speak or understand English at the time of the plea hearing, and we will not disturb that determination on appeal. *See, e.g., Ex parte Obi*, 446 S.W.3d 590, 599 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (op. on reh'g) ("The trial court did not credit Obi's self-serving testimony; and, given the conflicting evidence, it was free to disregard it.") (citing *Ex parte Fassi*, 388 S.W.3d at 888). We defer to the habeas court's implied finding that there was no need for an interpreter at the time appellant entered her "guilty" pleas. *See Le*, 300 S.W.3d at 327.

Appellant has not shown by a preponderance of the evidence that the trial court was aware during the plea proceedings that appellant could not speak and

11

understand English. *Accord, e.g., Valdez v. State*, 82 S.W.3d 784, 788 (Tex. App.—Corpus Christi 2002, no pet.) (affirming denial of habeas relief where appellant failed to show by a preponderance of the evidence that he was not aware of the consequences of his plea). We therefore hold that, on this record, the trial court did not abuse its discretion in denying appellant's habeas applications on the ground that she was not properly admonished in a language she could understand. *See Ex parte Obi*, 446 S.W.3d at 599; *Valdez*, 82 S.W.3d at 788.

We overrule appellant's second issue.

## C. Ineffective Assistance of Counsel Claim

In her third issue, appellant argues that she received ineffective assistance of counsel, rendering her pleas involuntary.

A defendant has a constitutional right to effective assistance of counsel in plea proceedings. *Ex parte Reedy*, 282 S.W.3d 492, 500-01 (Tex. Crim. App. 2009); *see also* U.S. Const. amend. VI; Tex. Const. art. I, § 10. This right extends to the plea bargaining process. *See Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991). When an applicant for habeas corpus relief challenges the validity of a plea entered upon the advice of counsel and contends that her counsel was ineffective, she must show that (1) her trial counsel's advice with respect to accepting a plea offer did not fall within the range of competence demanded of attorneys in criminal cases, and (2) but for the attorney's errors or deficiencies, the applicant would not have pleaded guilty and would have insisted on going to trial. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010) (citing *Ex parte Reedy*, 282 S.W.3d at 500; *Ex parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999)).

As the reviewing court, we indulge a strong presumption that counsel's actions and decisions fell within the wide range of reasonable professional

12

assistance. *See Ex parte Chandler*, 182 S.W.3d 350, 354 (Tex. Crim. App. 2005). To overcome this presumption, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the ineffectiveness. *See Ex parte Wolf*, 296 S.W.3d 160, 168-69 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)). A habeas applicant has the burden to show by a preponderance of the evidence that counsel's performance fell below a reasonable standard of competence. *See Ex parte Moody*, 991 S.W.2d at 858.

Appellant claims she received ineffective assistance of counsel in two respects: (1) her attorney failed to request an interpreter; and (2) her attorney misrepresented to her that she could "clear up her record in three to five years, [so] the best thing she could do is plead guilty to crimes she did not commit." We address each claim in turn.

### 1. *Failure to request an interpreter*

Appellant contends that her counsel should have requested the court appoint an interpreter during the plea proceedings. Appellant admitted, however, that she answered the trial court's questions in English when entering her pleas. The only contrary evidence in the record regarding whether Butler knew appellant required an interpreter is appellant's and her husband's testimony. By denying relief, the trial court impliedly found appellant and her husband not credible.[8] We defer, as we must, to the trial court's assessment of credibility. *See Ex parte Martinez*, 451

---

[8] Though the habeas court did not enter findings of facts, the judge and appellant's counsel engaged in the following exchange during the hearing on appellant's applications:

> [Appellant's counsel]: And I think the testimony is uncontroverted that her lawyer did not do a stellar job representing her. . . .

> [Court]: You're right, it is uncontroverted only if I believe her testimony about that is true, and I got to tell you I don't.

S.W.3d at 856 ("The trial court was free to disbelieve this testimony, and in its findings of fact, it expressly determined that appellant's account was not credible. The court did not make a similar finding with respect to [other] affidavit testimony . . . but we can infer that this testimony was implicitly rejected.") (citing *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013) (holding that appellate court must defer to trial court's implicit determination that an affiant lacks credibility, regardless of whether the affidavit testimony is controverted)).

As we determined above, given the conflicting evidence regarding appellant's ability to speak English, the habeas judge reasonably could have disbelieved appellant's testimony that she did not speak or understand English at the time of the plea hearing, and we will not disturb that determination on appeal absent an abuse of discretion. *See Ex parte Obi*, 446 S.W.3d at 599.

Viewing the evidence in the light most favorable to the habeas court's ruling, we conclude that appellant has not met her burden of showing that counsel's performance fell below a reasonable standard of competence by not moving to appoint an interpreter during the plea proceedings. *See Ex parte Fassi*, 388 S.W.3d at 886.

### 2. *Alleged failure to correctly advise regarding the availability of expunction*

Appellant has also failed to meet her burden of showing that counsel misled her as to the availability of expunction. Again, the only evidence of counsel's alleged misrepresentation that appellant could have her convictions removed from her record came from appellant and her husband, whom the trial court found not credible. We defer to the trial court's determination. *Ex parte Martinez*, 451 S.W.3d at 856.

Further, appellant's counsel stated in his affidavit that he could state with certainty that he "always review[ed] the plea papers in detail before allowing [his]

14

clients to sign." From this, the trial court reasonably could infer that counsel reviewed with appellant the charges against her and the consequences of her plea. Our prior precedent informs this conclusion. In *Le*, the appellant claimed that her counsel had erroneously told her that if she pleaded guilty, she could pay court fees and the case would be dismissed. *Le*, 300 S.W.3d at 327. The attorney's affidavit indicated that he "fully discussed" with appellant the case, charges, and consequences of her plea. *Id.* This court affirmed the trial court's denial of habeas relief, holding that the attorney's affidavit supported the trial court's implied finding that counsel provided effective assistance. *Id.* Similarly here, counsel's affidavit supports the habeas court's implied finding that appellant received effective assistance of counsel. *See id.*

\* \* \*

For the foregoing reasons, we hold that the trial court did not abuse its discretion in denying appellant's applications for habeas corpus relief on the ground that appellant received ineffective assistance of counsel. We overrule appellant's third issue.

## Conclusion

Appellant has failed to show by a preponderance of the evidence that her pleas of "guilty" were not entered voluntarily. Accordingly, we affirm the trial court's orders denying habeas corpus relief.

/s/    Kevin Jewell
Justice

Panel consists of Chief Justice Frost and Justices Boyce and Jewell.
Do Not Publish — Tex. R. App. P. 47.2(b).

Document: Ex parte Besada-Peru, 2018 Tex. App. LEXIS 693   Actions⌄

### Ⓐ Ex parte Besada-Peru, 2018 Tex. App. LEXIS 693

**Copy Citation**

Court of Appeals of Texas, Fourteenth District, Houston

January 25, 2018, Memorandum Opinion Filed

NO. 14-17-00193-CR, NO. 14-17-00194-CR, NO. 14-17-00195-CR

**Reporter**
**2018 Tex. App. LEXIS 693** * | 2018 WL 542238

EX PARTE MARCELA A. BESADA-PERU, Appellant

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Subsequent History:** petition for discretionary review dismd Ex parte Besada-Peru, 2018 Tex. Crim. App. LEXIS 161 (Tex. Crim. App., May 23, 2018)
petition for discretionary review dismd Ex parte Besada-Peru, 2018 Tex. Crim. App. LEXIS 163 (Tex. Crim. App., May 23, 2018)
petition for discretionary review dismd Ex parte Besada-Peru, 2018 Tex. Crim. App. LEXIS 153 (Tex. Crim. App., May 23, 2018)

**Prior History:** [*1] On Appeal from the County Criminal Court at Law No. 2, Harris County, Texas. Trial Court Cause Nos. 2118654, 2118655, 2118652.

## Core Terms

trial court, parte, interpreter, pleas, plea proceeding, convictions, pet, applications, admonish, guilty plea, misdemeanor, ineffective, preponderance of the evidence, understand english, corpus, ref'd, immigration consequences, speak english, credibility, assistance of counsel, consequences, defer, habeas relief, witnesses, contends, fail to request, deportation, involuntary, attorney's, disbelieve

## Case Summary

#### Overview
HOLDINGS: [1]-The denial of habeas relief following appellant's convictions for two misdemeanors in 2009 after pleading guilty to the charges was proper because Tex. Code Crim. Proc. Ann. art. 26.13 imposed no obligation on the trial court to admonish her on the deportation consequences of her pleas for the charged misdemeanor offenses; [2]-Appellant further failed to prove by a preponderance of the evidence that the trial court was aware that she could not speak or understand English at the time she entered her pleas; [3]-Appellant also failed to prove by a preponderance of the evidence that her trial counsel's performance fell below reasonable standards of competence by failing to request an interpreter or that counsel misled defendant as to the availability of expunction.

#### Outcome
Judgment affirmed.

#### ▼ LexisNexis® Headnotes

Criminal Law & Procedure > Criminal Offenses ▼ > Classification of Offenses ▼ > Misdemeanors ▼
View more legal topics

**HN1⬇ Classification of Offenses, Misdemeanors**
Tex. Code Crim. Proc. Ann. art. 11.09 allows a person who is confined on a charge of misdemeanor to apply for habeas relief. 🔍 More like this Headnote

*Shepardize - Narrow by this Headnote (0)*

Criminal Law & Procedure > Habeas Corpus ▾ > Jurisdiction ▾
View more legal topics

**HN2** ⬇ **Habeas Corpus, Jurisdiction**
Appellate courts have appellate jurisdiction from the denial of an application for writ of habeas corpus challenging a misdemeanor conviction. ⬚ More like this Headnote

*Shepardize - Narrow by this Headnote (0)*

Criminal Law & Procedure > Criminal Offenses ▾ > Classification of Offenses ▾ > Misdemeanors ▾
View more legal topics

**HN3** ⬇ **Classification of Offenses, Misdemeanors**
Appellate courts review a trial court's decision on an application for writ of habeas corpus for abuse of discretion. An applicant seeking misdemeanor post-conviction habeas corpus relief must establish entitlement to such relief by a preponderance of the evidence. ⬚ More like this Headnote

*Shepardize - Narrow by this Headnote (0)*

Criminal Law & Procedure > Habeas Corpus ▾ > Procedure ▾
View more legal topics

**HN4** ⬇ **Habeas Corpus, Procedure**
The trial court sits as the fact finder in a habeas proceeding brought under Tex. Code Crim. Proc. Ann. art. 11.09. In such cases, the habeas court is the sole judge of witness credibility, and an appellate court will not disturb its ruling absent a clear abuse of discretion. The trial court may accept or reject any or all of any witness's testimony, even if that testimony is uncontroverted. Appellate courts infer all implied findings of fact that are necessary to support the habeas court's ruling. The courts defer to the habeas court's implied or explicit findings of fact that are supported by the record, even when no witnesses testify and all of the evidence is submitted through affidavits. The courts consider the evidence presented in the light most favorable to the habeas court's ruling and will uphold the habeas court's judgment as long as it is correct on any theory of law applicable to the case. ⬚ More like this Headnote

*Shepardize - Narrow by this Headnote (0)*

Constitutional Law > ... > Fundamental Rights ▾ > 📄Procedural Due Process ▾ > Self-Incrimination Privilege ▾
Criminal Law & Procedure > ... > Entry of Pleas ▾ > Guilty Pleas ▾ > 📄Knowing & Intelligent Requirement ▾
View more legal topics

**HN5** ⬇ **Procedural Due Process, Self-Incrimination Privilege**
When a criminal defendant pleads guilty he or she waives several constitutional rights, such as the right to a trial by jury, the right to confront the witnesses against her, and her Fifth Amendment privilege against self-incrimination. Given that a guilty plea is a grave and solemn act to be accepted only with care and discernment, the waiver of constitutional rights associated with such a plea not only must be voluntary but must be a knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. It follows, therefore, that for a guilty plea to be valid, the defendant must have an actual awareness of the constitutional rights and privileges that she necessarily relinquishes. He or she must have a full understanding of what the plea connotes and its consequence. A person who proves by a preponderance of the evidence that a guilty plea was not voluntary or knowing is entitled to habeas relief. ⬚ More like this Headnote

*Shepardize - Narrow by this Headnote (0)*

Criminal Law & Procedure > ... > Entry of Pleas ▾ > Guilty Pleas ▾ > Allocution & Colloquy ▾
View more legal topics

**HN6** ⬇ **Guilty Pleas, Allocution & Colloquy**
Tex. Code Crim. Proc. Ann. art. 26.13(a)(4) requires a trial court, prior to accepting a plea of guilty or nolo contendere, to admonish a defendant of the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law. Article 26.13's statutory admonishments do not apply to misdemeanor cases. ⬚ More like this Headnote

*Shepardize - Narrow by this Headnote (0)*

Constitutional Law > ... > Fundamental Rights ▾ > Criminal Process ▾ > Right to Confrontation ▾
Criminal Law & Procedure > Trials ▾ > Defendant's Rights ▾ > 📄Right to Confrontation ▾

**HN7** ⬇ **Criminal Process, Right to Confrontation**
Providing an interpreter to an accused who does not understand English is required by the Confrontation Clause. The protections afforded by the Confrontation Clause extend to foreign nationals and apply in plea proceedings. If a defendant cannot hear or does not speak English well enough to understand plea proceedings or communicate with counsel, fundamental fairness and due process of law require that an interpreter be provided to translate between English and the accused's language. Tex. Code Crim. Proc. Ann. art. 38.30(a). Appointment of an interpreter is mandatory when the court determines on motion that a person charged or a witness does not understand and speak the English language, or when the trial court becomes aware that a defendant does not speak or understand English. Absent a knowing and voluntary waiver made on the record, the judge has an independent duty to implement this right, regardless of whether the matter is raised by the parties. A failure to do so results not only in a statutory violation but can render a defendant's plea constitutionally involuntary, or violate the defendant's right to confront the witnesses against the defendant. However, that a defendant is more fluent in a

language other than English does not necessitate an interpreter if the defendant demonstrates an ability to understand and speak English. 🔍 More like this Headnote

*Shepardize - Narrow by this Headnote (0)*

Constitutional Law > ... > Fundamental Rights ▾ > Criminal Process ▾ > Right to Confrontation ▾
Criminal Law & Procedure > Trials ▾ > Defendant's Rights ▾

**HN8** ⬇ **Criminal Process, Right to Confrontation**
A trial court may become aware that the defendant does not understand English if informed by a party or by noticing the problem sua sponte. Decisions regarding adequate interpretive services depend upon a potpourri of factors, including the defendant's understanding of the English language and the complexity of the pertinent law and its procedures, and the testimony. Accordingly, because the trial court has the defendant in its presence, observes his level of comprehension, and asks him questions, it has wide discretion in determining the adequacy of interpretive services. 🔍 More like this Headnote

*Shepardize - Narrow by this Headnote (0)*

Criminal Law & Procedure > ... > Standards of Review ▾ > Deferential Review ▾ > Credibility & Demeanor Determinations ▾

**HN9** ⬇ **Deferential Review, Credibility & Demeanor Determinations**
Appellate courts must defer to all implied factual findings supported by record. Appellate courts give almost total deference to the trial court's determination of historical facts supported by the record, especially the court's findings that are based on an evaluation of credibility. 🔍 More like this Headnote

*Shepardize - Narrow by this Headnote (0)*

Constitutional Law > ... > Fundamental Rights ▾ > Criminal Process ▾ > 📄Assistance of Counsel ▾
Criminal Law & Procedure > Counsel ▾ > 📄Effective Assistance of Counsel ▾
View more legal topics

**HN10** ⬇ **Criminal Process, Assistance of Counsel**
A defendant has a constitutional right to effective assistance of counsel in plea proceedings. U.S. Const. amend. VI; Tex. Const. art. I, § 10. This right extends to the plea bargaining process. When an applicant for habeas corpus relief challenges the validity of a plea entered upon the advice of counsel and contends that her counsel was ineffective, she must show that (1) her trial counsel's advice with respect to accepting a plea offer did not fall within the range of competence demanded of attorneys in criminal cases; and (2) but for the attorney's errors or deficiencies, the applicant would not have pleaded guilty and would have insisted on going to trial. 🔍 More like this Headnote

*Shepardize - Narrow by this Headnote (0)*

Constitutional Law > ... > Fundamental Rights ▾ > Criminal Process ▾ > 📄Assistance of Counsel ▾
Criminal Law & Procedure > Counsel ▾ > 📄Effective Assistance of Counsel ▾
Evidence > Inferences & Presumptions ▾ > 📄Presumptions ▾ > Rebuttal of Presumptions ▾
View more legal topics

**HN11** ⬇ **Criminal Process, Assistance of Counsel**
Reviewing courts indulge a strong presumption that counsel's actions and decisions fell within the wide range of reasonable professional assistance. To overcome this presumption, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the ineffectiveness. A habeas applicant has the burden to show by a preponderance of the evidence that counsel's performance fell below a reasonable standard of competence. 🔍 More like this Headnote

*Shepardize - Narrow by this Headnote (0)*

Criminal Law & Procedure > ... > Standards of Review ▾ > Deferential Review ▾ > Credibility & Demeanor Determinations ▾

**HN12** ⬇ **Deferential Review, Credibility & Demeanor Determinations**
Appellate courts must defer to the trial court's assessment of credibility. 🔍 More like this Headnote

*Shepardize - Narrow by this Headnote (0)*

**Judges:** Panel consists of Chief Justice Frost ▾ and Justices Boyce ▾ and Jewell ▾.

**Opinion by:** Kevin Jewell ▾

## Opinion

**MEMORANDUM OPINION**

Appellant Marcela A. Besada-Peru, born in Argentina and a legal United States resident since 2004, was convicted of two misdemeanors in 2009 after pleading guilty to the charges. Appellant contends that she is now subject to deportation as a result of her convictions. Appellant filed three applications for writ of habeas corpus, in which she alleged that her "guilty" pleas were involuntary for three reasons: (1) she was not admonished of the immigration consequences of her pleas; (2) she was unable to understand the proceedings in English and an interpreter was

required; and (3) her counsel provided ineffective assistance. After a hearing, the trial court denied her applications. She now challenges those rulings in these appeals.

We conclude the trial court did not abuse its discretion in denying relief. As to appellant's first ground, we hold that Texas Code of Criminal Procedure article 26.13—the statute on which appellant relies—imposed no obligation on the trial court to admonish appellant on the deportation [*2] consequences of her pleas for the charged misdemeanor offenses. We reject appellant's second argument because she failed to prove by a preponderance of the evidence that the trial court was aware that appellant could not speak or understand English at the time she entered her pleas. Finally, as to appellant's third argument, appellant failed to prove by a preponderance of the evidence that her trial counsel's performance fell below reasonable standards of competence by failing to request an interpreter or that counsel misled appellant as to the availability of expunction. Accordingly, we affirm the trial court's judgments.

### Background

Appellant is a native of Argentina and a permanent legal resident of the United States. Appellant pleaded guilty on November 10, 2009, to charges for (1) prostitution and (2) disorderly conduct. The charges arose from appellant's alleged conduct while working at a sexually oriented business. The trial court assessed punishment of six days' confinement in county jail for the prostitution conviction and a $200 fine for the disorderly conduct conviction. As part of the plea agreement, the State dismissed a third charge, also for prostitution. Appellant did [*3] not appeal the convictions.

Almost seven years after her convictions, appellant filed three applications for writ of habeas corpus. 1⬆ In each application, appellant challenged the voluntariness of her convictions on three grounds. First, she alleged that her counsel rendered ineffective assistance because (a) before appellant pleaded guilty, her counsel failed to advise her that a "guilty" plea and conviction for the charged offenses involving moral turpitude may affect her immigration status, 2⬆ and (b) counsel knew appellant was not fluent in English but failed to request an interpreter. Second, appellant argued that the trial court accepting the plea failed to admonish appellant regarding the immigration consequences of a "guilty" plea, in violation of Texas Code of Criminal Procedure article 26.13(a)(4). Tex. Code Crim. Proc. art. 26.13(a)(4). Third, because she did not speak English, appellant claimed she did not understand the plea proceedings and an interpreter was not made available to her.

In support of her applications, appellant submitted her affidavit, her husband's affidavit, and an affidavit from her counsel during the plea proceedings, James Butler. According to appellant and her husband, appellant spoke "almost no English" in 2009, and Butler did not speak Spanish. [*4] Appellant's husband interpreted conversations between appellant and Butler. Appellant stated in her affidavit that Butler told her that her "guilty pleas" would not affect her immigration status and that she could remove her convictions from her record in three to five years. After five years passed, appellant attempted unsuccessfully to contact Butler. Appellant and her husband then spoke to other attorneys, who told them that appellant could not have her convictions expunged. Appellant contends that she is now at risk of immediate deportation because her convictions are considered crimes of moral turpitude.

Butler stated in his affidavit that he could not recall with reasonable certainty whether he or the trial court specifically admonished appellant as to the possible immigration consequences of her pleas, but that he "always review[ed] the plea papers in detail before allowing [his] clients to sign."

The trial court held a hearing on appellant's applications. Appellant and her husband testified to essentially the same facts set forth in their affidavits. Appellant testified through an interpreter. Appellant did not offer any exhibits into evidence. No party introduced a reporter's [*5] record from the plea proceedings or copies of the judgments. The State called no witnesses.

The habeas judge was the same trial judge who accepted appellant's "guilty" pleas in 2009. During the hearing on appellant's habeas applications, the trial judge stated that he found appellant's testimony not credible. After the hearing, the trial court denied habeas relief.

Appellant now appeals.

### Jurisdiction and Standard of Review

Appellant was convicted of two misdemeanors. *HN1*⬆ Texas Code of Criminal Procedure article 11.09 allows a person who is "confined on a charge of misdemeanor" to apply for habeas relief. Tex. Code Crim. Proc. art. 11.09. 3⬆ *HN2*⬆ We have appellate jurisdiction from the denial of an application for writ of habeas corpus challenging a misdemeanor conviction. See *Ex parte Jordan*, 659 S.W.2d 827, 828 (Tex. Crim. App. 1983).

*HN3*⬆ We review a trial court's decision on an application for writ of habeas corpus for abuse of discretion. See *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011); *Ex parte Roberts*, 494 S.W.3d 771, 774 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). An applicant seeking misdemeanor post-conviction habeas corpus relief must establish entitlement to such relief by a preponderance of the evidence. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002).

*HN4*⬆ The trial court sits as the fact finder in a habeas proceeding brought under article 11.09. See *Ex parte Martinez*, 451 S.W.3d 852, 856 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). In such cases, the habeas court is the sole judge of witness credibility, and we will not disturb its ruling absent a clear abuse of discretion. [*6] See id.; see also *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), overruled on other grounds by *Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). The trial court may accept or reject any or all of any witness's testimony, even if that testimony is uncontroverted. *Ex parte Peterson*, 117 S.W.3d at 819 n.68; *Rios v. State*, 377 S.W.3d 131, 135 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); see also, e.g., *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008) (describing abuse-of-discretion standard generally); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (stating, in motion to suppress context, "the judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted"); cf. *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (holding that, in motion for new trial context, trial court not required to accept as true testimony of accused or any defense witness simply because it was uncontroverted).

We infer all implied findings of fact that are necessary to support the habeas court's ruling. See *Ex parte Martinez*, 451 S.W.3d at 856. We defer to the habeas court's implied or explicit findings of fact that are supported by the record, even when no witnesses testify and all of the evidence is submitted through affidavits. See *Ex parte Wheeler*, 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006). We consider the evidence presented in

the light most favorable to the habeas court's ruling. *Ex parte Fassi*, 388 S.W.3d 881, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We will uphold the habeas court's judgment as long as it is correct on any theory of law applicable to the case. *Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001) (per curiam).

### Analysis

**HN5** When a criminal defendant pleads guilty she waives several constitutional rights, such [*7] as the right to a trial by jury, the right to confront the witnesses against her, and her Fifth Amendment privilege against self-incrimination. *Davison v. State*, 405 S.W.3d 682, 686 (Tex. Crim. App. 2013). Given that a "guilty" plea is a "grave and solemn act to be accepted only with care and discernment," *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970), the waiver of constitutional rights associated with such a plea "not only must be voluntary but must be [a] knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Id*. It follows, therefore, that for a "guilty" plea to be valid, the defendant must have an actual awareness of the constitutional rights and privileges that she necessarily relinquishes. *Davison*, 405 S.W.3d at 686. In other words, she must have "a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). A person who proves by a preponderance of the evidence that a "guilty" plea was not voluntary or knowing is entitled to habeas relief. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).

Appellant argues that she pled guilty involuntarily and without knowledge of the immigration consequences because: (1) the court did not admonish her regarding the immigration consequences of her pleas; (2) she did not speak English and could not understand the plea proceedings; and (3) her trial counsel misled [*8] her as to whether her convictions could be expunged and failed to request an interpreter.

We address each contention in turn. 4⬇

### A. Immigration Consequences of Appellant's Guilty Pleas

In her first issue, appellant argues that her due process rights were violated because the trial court accepting her pleas in 2009 did not admonish her regarding the immigration consequences of a "guilty" plea, thereby rendering appellant's pleas involuntary.

As the sole basis for her argument, appellant contends the trial court violated Texas Code of Criminal Procedure article 26.13. **HN6** That statute requires a trial court, prior to accepting a plea of guilty or nolo contendere, to admonish a defendant of "the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." Tex. Code Crim. Proc. art. 26.13(a)(4).

Appellant's reliance on article 26.13 is misplaced. The Court of Criminal Appeals has long held that article 26.13's statutory admonishments do not apply to misdemeanor cases. *See, e.g.*, *State v. Guerrero*, 400 S.W.3d 576, 589 (Tex. Crim. App. 2013) ("[A]s we have repeatedly stated, [article 26.13] does not apply to misdemeanor cases."). According to appellant, both of her convictions [*9] were misdemeanors. Thus, the trial court accepting the 2009 pleas was not required to admonish appellant under article 26.13. *See id*.

We therefore hold that the trial court did not abuse its discretion in denying appellant's habeas applications on the ground that she was not admonished under article 26.13 on the immigration consequences of her pleas. *See Ex parte Garcia*, 353 S.W.3d at 787.

We overrule appellant's first issue.

### B. Appellant's Ability to Understand the Plea Proceedings

In her second issue, appellant argues that the trial court violated her due process rights by failing to admonish appellant in a language she could understand, i.e., Spanish, thereby rendering her pleas involuntary. 5⬇

**HN7** Providing an interpreter to an accused who does not understand English is required by the Confrontation Clause. *See Garcia v. State*, 149 S.W.3d 135, 141 (Tex. Crim. App. 2004). The protections afforded by the Confrontation Clause extend to foreign nationals 6⬇ and apply in plea proceedings. *See Linton v. State*, 275 S.W.3d 493, 501 (Tex. Crim. App. 2009); *Aleman v. State*, 957 S.W.2d 592, 594 (Tex. App.—El Paso 1997, no pet.). If a defendant cannot hear or does not speak English well enough to understand plea proceedings or communicate with counsel, fundamental fairness and due process of law require that an interpreter be provided to translate between English and the accused's language. *Linton*, 275 S.W.3d at 500. Appointment of an interpreter is mandatory when the court determines on motion that "a person charged [*10] or a witness does not understand and speak the English language," 7⬇ or when the trial court becomes aware that a defendant does not speak or understand English. *See Garcia*, 149 S.W.3d at 145; *Baltierra v. State*, 586 S.W.2d 553, 559 & n.9 (Tex. Crim. App. 1979). Absent a knowing and voluntary waiver made on the record, "the judge has an independent duty to implement this right," regardless of whether the matter is raised by the parties. *Garcia*, 149 S.W.3d at 145. A failure to do so results not only in a statutory violation but can render a defendant's plea constitutionally involuntary, *Aleman*, 957 S.W.2d at 594, or violate the defendant's right to confront the witnesses against the defendant. *Garcia*, 149 S.W.3d at 145. However, that a defendant is more fluent in a language other than English does not necessitate an interpreter if the defendant demonstrates an ability to understand and speak English. *See Hernandez v. State*, 986 S.W.2d 817, 822 (Tex. App.—Austin 1999, pet. ref'd).

**HN8** A trial court may become aware that the defendant does not understand English if informed by a party or "by noticing the problem *sua sponte*." *Garcia*, 149 S.W.3d at 145. "Decisions regarding adequate interpretive services depend upon a potpourri of factors, including the defendant's understanding of the English language and the complexity of the pertinent law and its procedures, and the testimony." *Linton*, 275 S.W.3d at 500. Accordingly, because the trial court has the defendant in its presence, "observ[es] [*11] his level of comprehension, and ask[s] him questions," it "has wide discretion in determining the adequacy of interpretive services." *Id*.

Appellant has not proven by a preponderance of the evidence that the trial court was aware of an alleged problem with appellant's understanding of the English language during the plea proceedings. The only evidence appellant provided in support of her claim was her own testimony and that of her husband. According to her affidavit, appellant's primary language is Spanish, and she testified at the habeas hearing that, at the time of her pleas, she did not speak or understand English. Appellant also testified that her trial counsel did not speak Spanish.

Appellant's husband translated the conversations between appellant and her counsel. Butler's affidavit, attached to appellant's habeas petitions, did not address whether Butler spoke English or Spanish to appellant, but he nonetheless knew "with certainty" that he "always review[ed] the plea papers in detail before allowing [his] clients to sign."

We do not have a reporter's record of the plea hearing, and nothing in the record provided shows that appellant requested an interpreter at the plea hearing. **[*12]** Appellant did not file a motion for an interpreter. When asked questions in English during the plea proceedings, she answered in English. Although appellant contends her answers were prompted by her counsel, she has not shown that she raised any objection during plea proceedings. Nothing in the record reflects that the trial court was made aware of appellant's purported inability to speak, read, and understand English. In fact, in making her ineffective assistance of counsel arguments, appellant asserts (and thus confirms) that her counsel failed to alert the trial court to her inability to speak English and her need for an interpreter.

Even though the State did not offer evidence to controvert appellant's and her husband's affidavits, it was within the trial court's discretion to disbelieve their assertions that appellant did not read or speak English at the time of the plea proceedings. *See Charles v. State*, 146 S.W.3d 204, 210 (Tex. Crim. App. 2004), *superseded by rule on other grounds as stated in State v. Herndon*, 215 S.W.3d 901, 905 n.5 (Tex. Crim. App. 2007); *Shanklin v. State*, 190 S.W.3d 154, 167 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd); *see also Le*, 300 S.W.3d at 327 (holding that **HN9** appellate court must defer to all implied factual findings supported by record). As stated on the record, the trial judge did not believe that appellant "does not understand sufficient English in order to have participated **[*13]** in a plea in a criminal court." The trial court, and not this court, is in the best position to have determined whether appellant understood what she was stipulating to at the time she entered her plea. *See Ex parte Wilson*, 171 S.W.3d 925, 928 (Tex. App.—Dallas 2005, no pet.). We give almost total deference to the trial court's determination of historical facts supported by the record, especially the court's findings that are based on an evaluation of credibility. *See Ex parte Klem*, 269 S.W.3d 711, 718 (Tex. App.—Beaumont 2009, pet. ref'd); *Ex parte Wilson*, 171 S.W.3d at 928. Given the conflicting evidence regarding appellant's ability to understand and speak English, the judge reasonably could have disbelieved appellant's and appellant's husband's testimony that appellant did not speak or understand English at the time of the plea hearing, and we will not disturb that determination on appeal. *See, e.g., Ex parte Obi*, 446 S.W.3d 590, 599 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (op. on reh'g) ("The trial court did not credit Obi's self-serving testimony; and, given the conflicting evidence, it was free to disregard it.") (citing *Ex parte Fassi*, 388 S.W.3d at 888). We defer to the habeas court's implied finding that there was no need for an interpreter at the time appellant entered her "guilty" pleas. *See Le*, 300 S.W.3d at 327.

Appellant has not shown by a preponderance of the evidence that the trial court was aware during the plea proceedings that appellant could not speak and understand **[*14]** English. *Accord, e.g., Valdez v. State*, 82 S.W.3d 784, 788 (Tex. App.—Corpus Christi 2002, no pet.) (affirming denial of habeas relief where appellant failed to show by a preponderance of the evidence that he was not aware of the consequences of his plea). We therefore hold that, on this record, the trial court did not abuse its discretion in denying appellant's habeas applications on the ground that she was not properly admonished in a language she could understand. *See Ex parte Obi*, 446 S.W.3d at 599; *Valdez*, 82 S.W.3d at 788.

We overrule appellant's second issue.

### C. Ineffective Assistance of Counsel Claim

In her third issue, appellant argues that she received ineffective assistance of counsel, rendering her pleas involuntary.

**HN10** A defendant has a constitutional right to effective assistance of counsel in plea proceedings. *Ex parte Reedy*, 282 S.W.3d 492, 500-01 (Tex. Crim. App. 2009); *see also* U.S. Const. amend. VI; Tex. Const. art. I, § 10. This right extends to the plea bargaining process. *See Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991). When an applicant for habeas corpus relief challenges the validity of a plea entered upon the advice of counsel and contends that her counsel was ineffective, she must show that (1) her trial counsel's advice with respect to accepting a plea offer did not fall within the range of competence demanded of attorneys in criminal cases, and (2) but for the attorney's errors or deficiencies, the applicant would not have pleaded guilty **[*15]** and would have insisted on going to trial. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010) (citing *Ex parte Reedy*, 282 S.W.3d at 500; *Ex parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999)).

**HN11** As the reviewing court, we indulge a strong presumption that counsel's actions and decisions fell within the wide range of reasonable professional assistance. *See Ex parte Chandler*, 182 S.W.3d 350, 354 (Tex. Crim. App. 2005). To overcome this presumption, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the ineffectiveness. *See Ex parte Wolf*, 296 S.W.3d 160, 168-69 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)). A habeas applicant has the burden to show by a preponderance of the evidence that counsel's performance fell below a reasonable standard of competence. *See Ex parte Moody*, 991 S.W.2d at 858.

Appellant claims she received ineffective assistance of counsel in two respects: (1) her attorney failed to request an interpreter; and (2) her attorney misrepresented to her that she could "clear up her record in three to five years, [so] the best thing she could do is plead guilty to crimes she did not commit." We address each claim in turn.

### 1. *Failure to request an interpreter*

Appellant contends that her counsel should have requested the court appoint an interpreter during the plea proceedings. Appellant admitted, however, that she answered the trial court's questions in English when entering her pleas. The only contrary evidence **[*16]** in the record regarding whether Butler knew appellant required an interpreter is appellant's and her husband's testimony. By denying relief, the trial court impliedly found appellant and her husband not credible. **8** **HN12** We defer, as we must, to the trial court's assessment of credibility. *See Ex parte Martinez*, 451 S.W.3d at 856 ("The trial court was free to disbelieve this testimony, and in its findings of fact, it expressly determined that appellant's account was not credible. The court did not make a similar finding with respect to [other] affidavit testimony . . . but we can infer that this testimony was implicitly rejected.") (citing *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013) (holding that appellate court must defer to trial court's implicit determination that an affiant lacks credibility, regardless of whether the affidavit testimony is controverted)).

As we determined above, given the conflicting evidence regarding appellant's ability to speak English, the habeas judge reasonably could have disbelieved appellant's **[*17]** testimony that she did not speak or understand English at the time of the plea hearing, and we will not disturb that determination on appeal absent an abuse of discretion. *See Ex parte Obi*, 446 S.W.3d at 599.

Viewing the evidence in the light most favorable to the habeas court's ruling, we conclude that appellant has not met her burden of showing that counsel's performance fell below a reasonable standard of competence by not moving to appoint an interpreter during the plea proceedings. *See Ex parte Fassi*, 388 S.W.3d at 886.

*2. Alleged failure to correctly advise regarding the availability of expunction*

Appellant has also failed to meet her burden of showing that counsel misled her as to the availability of expunction. Again, the only evidence of counsel's alleged misrepresentation that appellant could have her convictions removed from her record came from appellant and her husband, whom the trial court found not credible. We defer to the trial court's determination. *Ex parte Martinez*, 451 S.W.3d at 856.

Further, appellant's counsel stated in his affidavit that he could state with certainty that he "always review[ed] the plea papers in detail before allowing [his] clients to sign." From this, the trial court reasonably could infer that counsel reviewed with appellant the charges against **[*18]** her and the consequences of her plea. Our prior precedent informs this conclusion. In *Le*, the appellant claimed that her counsel had erroneously told her that if she pleaded guilty, she could pay court fees and the case would be dismissed. *Le*, 300 S.W.3d at 327. The attorney's affidavit indicated that he "fully discussed" with appellant the case, charges, and consequences of her plea. *Id.* This court affirmed the trial court's denial of habeas relief, holding that the attorney's affidavit supported the trial court's implied finding that counsel provided effective assistance. *Id.* Similarly here, counsel's affidavit supports the habeas court's implied finding that appellant received effective assistance of counsel. *See id.*

\* \* \*

For the foregoing reasons, we hold that the trial court did not abuse its discretion in denying appellant's applications for habeas corpus relief on the ground that appellant received ineffective assistance of counsel. We overrule appellant's third issue.

**Conclusion**

Appellant has failed to show by a preponderance of the evidence that her pleas of "guilty" were not entered voluntarily. Accordingly, we affirm the trial court's orders denying habeas corpus relief.

/s/ Kevin Jewell ▾

Justice

**[*19]** Panel consists of Chief Justice Frost ▾ and Justices Boyce ▾ and Jewell ▾.

Do Not Publish — Tex. R. App. P. 47.2(b).

---

**Footnotes**

**1** ⩲
Though appellant sought to have two convictions vacated, she filed three habeas applications because the State "should have their dismissal [of the third charge] back if the other two were returned."

**2** ⩲
Appellant has abandoned this ground on appeal.

**3** ⩲
The State does not dispute that appellant is "confined" for purposes of article 11.09 because she faces collateral legal consequences resulting from her misdemeanor convictions. *See, e.g., Le v. State*, 300 S.W.3d 324, 326-27 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (applicant's federal detention and potential deportation were based on Texas misdemeanor convictions and thus she faced "collateral legal consequences"); *State v. Collazo*, 264 S.W.3d 121, 126 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (the term "confinement" encompasses, *inter alia*, any restraint on personal liberty).

**4** ⩲
The State argues for the first time on appeal that the doctrine of laches bars appellant's requests for habeas relief. *See Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex. Crim. App. 2014) (per curiam) (State does not waive defense of laches by failing to assert the defense in the trial court). Because we conclude the trial court did not abuse its discretion in denying the applications, we need not consider the State's laches argument. *Accord Ex parte Martinez*, 451 S.W.3d at 855 (addressing appellant's merits-based issue rather than trial court's alternative laches ruling).

**5** ⩲
In her third issue, which we address in the next section, appellant challenges her trial counsel's failure to have an interpreter appointed during the plea proceedings. This second issue solely concerns whether the trial court erred in not appointing an interpreter.

**6** ⩲
*Garcia*, 149 S.W.3d at 141 (citing *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S. Ct. 977, 41 L. Ed. 140 (1896)).

**7** ⩲
Tex. Code Crim. Proc. art. 38.30(a).

**8**  Though the habeas court did not enter findings of facts, the judge and appellant's counsel engaged in the following exchange during the hearing on appellant's applications:

[Appellant's counsel]: And I think the testimony is uncontroverted that her lawyer did not do a stellar job representing her.

. . .

[Court]: You're right, it is uncontroverted only if I believe her testimony about that is true, and I got to tell you I don't.



Go to ⌄                                Q ⌄                        ooo

About LexisNexis®    Privacy Policy    Terms & Conditions    Sign Out    Copyright © 2018 LexisNexis. All rights reserved.

NOS. <u>PD-0326-18; PD-0327-18; PD-0328-18</u>

\*

# IN THE TEXAS COURT OF CRIMINAL APPEALS
# AT AUSTIN, TEXAS
\*

## MARCELA A. BESADA-PERU

vs.

## THE STATE OF TEXAS
\*

On Review from the Fourteenth Court of Appeals, at Houston, Texas
Appeal Nos. 14-17-00193-CR; 14-17-00194-CR; 14-17-00195-CR; and

On Review from the Harris County Criminal Court at Law No. 2
Case Nos. 2118652, 2118654 and 2118655
Hon. William Harmon, Presiding

## APPENDIX

B.     Order Denying Rehearing

1

**Justices**

WILLIAM J. BOYCE
TRACY CHRISTOPHER
MARTHA HILL JAMISON
J. BRETT BUSBY
JOHN DONOVAN
MARC W. BROWN
KEN WISE
KEVIN JEWELL



**Chief Justice**
KEM THOMPSON FROST

**Clerk**
CHRISTOPHER A. PRINE
PHONE 713-274-2800

## Fourteenth Court of Appeals

301 Fannin, Suite 245
Houston, Texas 77002

Tuesday, February 27, 2018

Eric Kugler
Assistant District Attorney
1201 Franklin
Suite 600
Houston, TX 77002-1923
* DELIVERED VIA E-MAIL *

Clay S. Conrad
Looney & Conrad, P.C.
11767 Katy Freeway
Suite 740
Houston, TX 77079
* DELIVERED VIA E-MAIL *

Christopher Conrad
Harris County District Attorney's Office
1201 Franklin St Rm 6
Houston, TX 77002-1929
* DELIVERED VIA E-MAIL *

RE: Court of Appeals Number: 14-17-00195-CR
Trial Court Case Number: 2118652

Style: Ex Parte Marcela A Besada-Peru
v.
The State of Texas

Please be advised that on this date the Court DENIED APPELLANT'S motion for rehearing in the above cause.

**Panel Consists Of Chief Justice Frost and Justices Boyce and Jewell**

Sincerely,

/s/ Christopher A. Prine, Clerk

NOS. <u>PD-0326-18</u>; <u>PD-0327-18</u>; <u>PD-0328-18</u>

\*

# IN THE TEXAS COURT OF CRIMINAL APPEALS
# AT AUSTIN, TEXAS

\*

## MARCELA A. BESADA-PERU

### vs.

## THE STATE OF TEXAS

\*

---

On Review from the Fourteenth Court of Appeals, at Houston, Texas
Appeal Nos. 14-17-00193-CR; 14-17-00194-CR; 14-17-00195-CR; and

On Review from the Harris County Criminal Court at Law No. 2
Case Nos. 2118652, 2118654 and 2118655
Hon. William Harmon, Presiding

---

## <u>APPENDIX</u>

C.   Order Denying Rehearing En Banc

1

FILE COPY

**Justices**

WILLIAM J. BOYCE
TRACY CHRISTOPHER
MARTHA HILL JAMISON
J. BRETT BUSBY
JOHN DONOVAN
MARC W. BROWN
KEN WISE
KEVIN JEWELL

**Chief Justice**
KEM THOMPSON FROST

**Clerk**
CHRISTOPHER A. PRINE
PHONE 713-274-2800



## Fourteenth Court of Appeals

301 Fannin, Suite 245
Houston, Texas 77002

Tuesday, February 27, 2018

Eric Kugler
Assistant District Attorney
1201 Franklin
Suite 600
Houston, TX 77002-1923
* DELIVERED VIA E-MAIL *

Clay S. Conrad
Looney & Conrad, P.C.
11767 Katy Freeway
Suite 740
Houston, TX 77079
* DELIVERED VIA E-MAIL *

Christopher Conrad
Harris County District Attorney's Office
1201 Franklin St Rm 6
Houston, TX 77002-1929
* DELIVERED VIA E-MAIL *

RE:    Court of Appeals Number: 14-17-00194-CR
       Trial Court Case Number: 2118655

Style: Ex Parte Marcela A Besada-Peru
       v.
       The State of Texas

Please be advised that on this date the court DENIED APPELLANT'S motion for rehearing en banc in the above cause.

**Panel Consists Of Chief Justice Frost and Justices Boyce, Christopher, Jamison, Busby, Donovan, Brown, Wise and Jewell**

Sincerely,

/s/ Christopher A. Prine, Clerk